

SEALED

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2014 JUN 11  P 4: 09

SA14CA0528 OG

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| *ex rel.* UNIVERSITY LOFT COMPANY § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO. _____ |
| v. § | |
| § | |
| § | FILED IN CAMERA |
| § | AND UNDER SEAL |
| § | Pursuant To 31 USC §3730(b) |
| AVTEQ, INC., KLN STEEL PRODUCTS, § | |
| CO., LLC, JOHN O'DONNELL and KELLY § | |
| O'DONNELL § | |
| § | |
| Defendants. § | |

### PLAINTIFF'S ORIGINAL COMPLAINT
### (JURY TRIAL DEMANDED)

The United States of America *ex rel.* J Squared, Inc. d/b/a University Loft Company ("University Loft" or "Relator"), files this Complaint against Defendants Avteq, Inc. ("Avteq"), KLN Steel Products, Co., LLC ("KLN"), John O'Donnell and Kelly O'Donnell (collectively "Defendants"). UNIVERSITY LOFT also brings claims on its own behalf for damages caused to UNIVERSITY LOFT by Defendants. In support thereof, University Loft respectfully would show the Court as follows:

### I. PARTIES

1. University Loft is an Indiana Corporation having its principal place of business in Greenfield, Indiana.

2. Defendant Avteq, Inc. is a Texas corporation with its principal place of business at 1151 Empire Central, Dallas, Texas, 75247. Upon information and belief, the listed registered agent for Avteq, Inc. is Kelly O'Donnell.

3. Defendant KLN is a Texas corporation with its principal place of business at 4200 N. Pan Am Expressway, San Antonio, Texas, 78218. Upon information and belief, the listed registered agent for KLN is Kelly O'Donnell with listed address at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

4. Defendant John O'Donnell is an executive officer of Avteq and/or KLN and resides in Dallas, Texas. He may be served at the headquarters for Avteq at 1151 Empire Central, Dallas, Texas, 75247, or at any other location where he may be found.

3. Defendant Kelly O'Donnell is an executive officer of Avteq and/or KLN and resides in San Antonio, Texas. She may be served at the headquarters for KLN at 4200 N. Pan Am Expressway, San Antonio, Texas, 78218 or at any other location where she may be found.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff), and 31 U.S.C. § 3732(a) (False Claims Act). The Court has supplemental jurisdiction over University Loft's state law claims for unfair competition.

5. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found, reside, and/or transact business in this District. Title 31, United States Code, Section 3732(a) further provides for nationwide service of process.

5. Upon information and belief, this Complaint is not based on the facts underlying any pending related *qui tam* action, within the meaning of the False Claims Act's first-to-file rule, 31 U.S.C. § 3730(b)(5).

6. This action is not precluded by any provisions of the False Claims Act's jurisdiction bar, 31 U.S.C. § 3730(e) *et seq.*

      a.    Upon information and belief, this Complaint is not based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States is already a party. 31 U.S.C. §3730(e)(3).

      b.    Upon further information and belief, there has been no "public disclosure" of key facts alleged herein regarding University Loft's discovery and investigation of the fraud.

7.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because at least some of the Defendants can be found in and transact business within this District.

## THE FEDERAL FALSE CLAIMS ACT

8.    The False Claims Act ("FCA"), which was originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153 to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives for individuals with knowledge of fraud on the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.

9.    The FCA provides, among other things, that any person who 1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or 2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable for a civil penalty ranging from $5,500 up to $11,000 (as of the filing date of this Complaint) for each such violation, plus three times the amount of the damages sustained by the Federal Government.

10. The FCA allows any person having information about false or fraudulent claims to bring an action as a relator for itself and the Government, and to share in any recovery.[1] The FCA requires that the original *qui tam* complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time). Based on these provisions, University Loft seeks through this action to recover on behalf of the United States all available damages, civil penalties, and other relief for the violations alleged herein. University Loft through this action also seeks to recover the damages it has sustained because of Defendants' actions.

11. Although the precise amount of the loss from Defendants' misconduct alleged in this action cannot presently be determined, University Loft estimates that the damages and civil penalties that may be assessed against the Defendants under the facts alleged in this Complaint are at least several million dollars.[2]

### III. DESCRIPTION OF THE PARTIES

12. *University Loft* - University Loft Company employs nearly two hundred American workers to manufacture and/or assemble its furniture at its factories in Indiana and Tennessee. University Loft and its American workers can compete head-to-head with any other company in the United States in this industry—as long as there is a level playing field and its competitors play by the rules.

---

[1] The FCA was amended again 2010 in connection with enactment of health care reform laws. *See the Patient Protection and Affordable Care Act*, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 901 (Mar. 23, 2010). Among other changes, the "public disclosure bar" and "original source" provisions in Section 3730(e)(4) of the FCA were amended to broaden the ability of relators to bring *qui tam* lawsuits under the Act.

[2] Upon information and belief, the companies in the Avteq Group have been awarded over $400 Million in government contracts since 2006. While Relator believes the behavior of Defendants complained of herein to be pervasive, Relator does not at this time have sufficient information to attempt to accurately calculate the damages and civil penalties for which Defendants would be liable.

13.     *The Defendants* – Defendant Avteq, Inc. has divisions called Avteq Government Services and Avteq Living. In November 2011, Defendant KLN, which was a competitor of Defendant Avteq, declared bankruptcy along with its affiliated companies Dehler and Thurston (collectively, "KLN et al"). Avteq purchased KLN et al out of bankruptcy in 2012. Avteq, KLN, Dehler, and Thurston are treated as multiple brands under the Avteq Group umbrella (the "Avteq Group"). Avteq also appears to be affiliated with several companies that are not formally in the Avteq Group: Tupelo Manufacturing, which is based in Tupelo, Mississippi, and HJA, S.A. ("HJA"), which is a Columbian company based in Medellin, Columbia. HJA specializes in manufacturing steel furniture. Defendants John O'Donnell and Kelly O'Donnell own and/or control the companies in the Avteq Group.

## IV. SUMMARY

14.     University Loft and companies in the Avteq Group are competitors and often bid for the same contracts in supplying furniture for military contracts. University Loft's supplier relationships, manufacturing techniques and its internal pricing models have been developed over many years and comprise the primary reasons why University Loft is often the successful bidder on projects. In recent years, however, University Loft has lost multiple contracts to companies in the Avteq Group. As described below, University Loft has learned that Defendants Avteq, KLN, John O'Donnell, and Kelly O'Donnell have been engaged in numerous illegal activities which have given them an unfair competitive advantage over University Loft.

15.     Through interviews of a key consultant associated with Avteq, University Loft learned that the Defendants have defrauded the United States out of millions of dollars by engaging in a range of illegal activities involving procurement and delivery of goods under Government Contracts. According to this source, the illegal activities include, but are not

necessarily limited to: (1) bid-rigging, (2) artificially inflating costs on freight through the use of a sham company, (3) artificially inflating costs on auxiliary items, (4) falsely certifying that products were made in the United States when they were actually manufactured at an Avteq-affiliated factory in Medellin, Columbia, and (5) falsely representing to the United States that products were made prior to a cancellation order to induce the government to make a cancellation payment of over $400,000.

16. University Loft also suspects that the Defendants knowingly delivered products of inferior quality or that otherwise differed from the contract specifications, and may be falsely claiming that Avteq is an "8(a) woman-owned business" in an effort to gain preferential treatment.

## V. FACTS

17. In April of 2014, Les Singleton ("Singleton") approached University Loft, claiming to have information regarding illegal conduct by the Defendants at the direction of John O'Donnell. Singleton has been working as an independent contractor responsible for negotiating government contracts for Avteq for approximately twelve years. Singleton has handled marketing and sales for certain matters on behalf of Avteq and is paid on commission. He shares an office with John O'Donnell and claims to have been present during many conversations in which John O'Donnell has made decisions on behalf of the Defendants to engage in the illegal activities described herein. Upon information and belief, even though John O'Donnell is only listed as a Vice-President of Defendant Avteq, he has been and still is the principal owner and decision-maker of Avteq, and exercises ultimate control over Avteq and KLN (collectively, the "Defendant Companies").

18. University Loft's interviews of Singleton revealed that Defendants have been engaged in a variety of illegal schemes to defraud the United States. Brief descriptions of those activities are as follows.

*Falsification of Point of Origin*

19. Approximately six years ago, Avteq had a Government Contract to provide furniture that complied with the "Buy America Act" ("BAA") to a military installation. However, Avteq did not have a manufacturing facility for the furniture. Upon information and belief, to fulfill the contract, Kelly O'Donnell (who is married to a Colombian national) and her father used a Columbian company HJA, S.A. they created in 2006 to manufacture and supply the furniture in violation of the BAA. They then caused Avteq to falsely certify that the furniture was "Made in America."

*Bid-Rigging*

20. With Avteq and KLN as "separate" bidders, the Defendants have been able to "rig" bids for individual government projects. Project managers for the Defendant Companies prepare separate bids. Then, in violation of the law, Defendant John O'Donnell individually reviews the bids and makes strategic changes to increase the chances that one of the bids is selected. For instance, Defendant John O'Donnell might change one bid to be at a higher price with a quicker completion and another bid to be at a lower price but with a slower completion. Thus, he could attract both the purchaser who was inclined to get a project done more quickly and the purchaser who was more interested in the lower price. Regardless of which entity won the bid, the product would be manufactured in KLN's facilities. The only distinction would be the brand identifier on the end product.

*False Freight Invoices*

21. To boost margins, the Defendants claim to use a freight broker named "Exceed Logistics," and submit payment requests to the Government, relying on invoices from this company. By claiming to use a freight broker, Defendants are able to invoice the Government for the claimed payment to Exceed Logistics, something that might be permissible if Exceed Logistics was a legitimate and independent operation. Upon information and belief, however, the entity does not exist. It does not have freight accounts for other entities outside of Defendants and does not have a store front or physical operations. It is, for all practical purposes, just another bank account used by Defendants.

*Padding Auxiliary Items*

22. Upon information and belief, the Defendants impermissibly mark-up the price of outside (auxiliary) items that are supposed to be provided as a pass-through under the terms of its contracts. Upon information and belief, John O'Donnell personally coordinates these mark-ups. For example, if the contract calls for one of the Defendant Companies to provide third-party refrigerators as accessory products, that company would arrange to purchase the refrigerators for $100 apiece, but submit false billing showing each refrigerator cost $120.

*Fraudulently Obtaining Cancellation Penalties*

23. Upon information and belief, Avteq was awarded a contract several years ago to provide furniture for Hunter Army Airfield (Savannah, Georgia). After the contract was awarded, the Government cancelled delivery of some of the products under the contract. Upon information and belief, to induce the United States to make a cancellation payment, Singleton (under the direction of Defendant John O'Donnell), told the Government's representatives that Avteq had already made the furniture prior to cancellation and produced photos showing the

furniture. The statements were false and the photos were for products being used to fulfill a different contract (possibly a contract for Ft. Lewis). Based on these false representations, Avteq received a payment of nearly $400,000 for products it never manufactured or delivered.

*Substituting Nonconforming or Inferior Products*

24.     Upon information and belief, the Defendants knowingly use materials and/or provide nonconforming products that are of lesser quality than required by contract with the government. For instance, where the contract calls for a certain gauge of steel, they may use a smaller (i.e. less expensive) gauge, while still submitting invoices based upon the cost of the more expensive gauge. For example, in 2012, Dehler (which is part of the Avteq Group) was the successful bidder to provide certain furniture for Camp Lejune (Contract Award #N00189-11-A-0056-NB01). After University Loft filed a protest, the GAO found that the furniture was nonconforming.

*Misrepresenting Avteq as a Woman-Owned Small Business.*

25.     Pursuant to 15 U.S.C. § 7108, a concern qualifies as Woman Owned Small Business where not less than 51% of the business is owned by a woman or a group of women and that woman or group of women control and operate the business. Pursuant to 15 U.S.C. § 632 and 13 C.F.R. § 121.201, a "small business" as it relates to a furniture manufacturer is defined by the number of employees, with the upper limit being 500.

26.     Upon information and belief, Defendant Avteq has obtained or attempted to obtain preferential treatment in soliciting and procuring government contracts by falsely claiming that it is a Woman Owned Small Businesses. Upon information and belief, while Kelly

O'Donnell is nominally the president of Avteq, the de facto owner and controller of Avteq is John O'Donnell.

## VI. CAUSES OF ACTION

### COUNT I

### Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A)

27. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

28. By virtue of the acts described above, Defendants violated the FCA by knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval, including but not limited to the aforementioned fraudulently obtaining cancellation penalties, padding of amounts invoiced for auxiliary items and submitting false freight invoices.

29. By reason of Defendants' actions, the United States has been damaged, and continues to be damaged, in a substantial amount.

### COUNT II

### Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(B)

30. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

31. By virtue of the acts described above, Defendants violated the FCA by knowingly making, using, or causing to be made or used, false records or statements to induce the United States to pay a claim. Upon information and believe, this fraud includes misrepresenting the status of completion of product to fraudulently obtain cancellation penalties, submitting false documentation relating to amounts invoiced for auxiliary items and freight, misrepresenting

Avteq as being a Woman-Owned Small Business, and submitting false documentation regarding the point of origin of products.

32. By reason of Defendants' actions, the United States has been damaged, and continues to be damaged, in a substantial amount. Moreover, to the extent that Defendant Avteq obtained any contracts by making false representations about being a Woman Owned Small Business, the Presumed Loss Rule applies and damages include, but are not limited to the full value amount paid by the Government to Defendants on such contracts. 15 U.S.C. § 632(w).

## COUNT III
### Conspiracy to Violate the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)

33. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

34. Defendants acted in concert with each other and with other conspirators to violate the False Claims Act as alleged in Counts I, II, and III above. They committed the overt acts described above in furtherance of the conspiracy, including but not limited to rigging bids, inflating invoices, lying to the United States to obtain a cancellation payment, and making misrepresentations about Avteq being a Woman Owned Small Businesses.

35. By reason of Defendants' conspiracy, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT IV
### Unfair Competition by Avteq and KLN

36. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

37. University Loft is a direct competitor of Defendants Avteq and KLN. By virtue of the acts described above, Defendants Avteq and KLN Defendant have engaged in unfair

competition under Texas law because it has engaged in a pattern of unlawful and/or unethical business conduct. These business practices are contrary to honest practice in commercial matters and have interfered with University Loft's ability to conduct its business. These Defendants' actions have proximately caused damages to University Loft in an amount exceeding $75,000.

38. University Loft hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States *ex rel.* University Loft Company and University Loft on its own behalf, respectfully requests that judgment be entered against Defendants, ordering that:

a. Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 plus three times the amount of damages the United States has sustained because of Defendants' actions;

b. University Loft be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

c. University Loft recover actual and exemplary damages on its unfair competition claims;

d. University Loft be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d); and

e. The United States and University Loft recover such other relief as the Court deems just and proper.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200, Austin, TX 78701
P.O. Box 98, Austin TX 78767-0098
(512) 480-5653 Telephone
(512) 480-5853 Telecopy

By: _____
Steven D. Smit
State Bar No. 18527500
ssmit@gdhm.com
Brian T. Cumings
State Bar No. 24082882
bcumings@gdhm.com

ATTORNEYS FOR UNIVERSITY LOFT COMPANY