IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* UNIVERSITY LOFT COMPANY | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil No. SA-14-CA-528-OLG |
| | § | |
| AGS ENTERPRISES, INC. D/B/A AVTEQ, | § | |
| INC., KLN STEEL PRODUCTS CO. LLC, | § | |
| FURNITURE BY THURSTON, INC., | § | |
| DEHLER MANUFACTURING, INC., JOHN | § | |
| O'DONNELL, and KELLY O'DONNELL | § | |
|     Defendants. | § | |

**PLAINTIFF'S (OPPOSED) MOTION TO STRIKE DEFENDANTS'
GLOBAL "ATTORNEYS' EYES ONLY" DESIGNATIONS,
OR ALTERNATIVELY, FOR ITEMIZED LOG**

University Loft Company ("Plaintiff") respectfully moves the Court to strike Defendants'

global "Attorneys' Eyes Only" (AEO) designations of documents that Defendants have produced

in this cause.  Defendants' mass AEO designation constitutes a near-complete failure to comply

with the Protective Order's requirement that such designations be made in "good faith."  Dkt. 49,

2-3.

In the alternative, Plaintiff requests that Defendants be compelled to produce an itemized

log explaining the justification for "each document designated as AEO," similar to the approach

adopted by a sister court in the face of nearly identical circumstances.[1]

For example, on May 31, 2016, after Plaintiff had already repeatedly expressed concern

about Defendants' indiscriminate use of the AEO designation and asked Defendants to review its

designations, Defendants produced another 90,733 pages of documents.  Every single page of

that production was designated "Attorneys' Eyes Only," including thousands of pages of public

---

[1] *Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 248 F.R.D. 598, 605 & n. 23 (D. Kan. 2008).
Emphasis in quotations is "emphasis added" unless otherwise stated.

FAR Reports, third party appliance manuals, blank government forms, logos, and other such publicly available documents.  Defendants have engaged in this improper indiscriminate use of AEO designations from the outset of discovery — designating third party company logos, public filings with State agencies, copies of documents already produced by third parties with no classified designation, blank pages, and other plainly non-sensitive information as part of their mass AEO designations, in addition to historic documents that are no longer are competitively "sensitive" which show their fraud against the Government.

By inappropriately designating the vast majority of their production as "AEO," Defendants are effectively preventing Plaintiff's counsel from sharing important information with their client about the Defendants' fraud schemes, or preparing the client for the corporate deposition noticed by Defendants – a deposition in which Defendants are requiring Plaintiff to designate representatives to testify about Plaintiff's claims, including specific details of Defendants' fraud schemes.[2] Defendants' improper use of the AEO designation is also preventing Plaintiff and the Assistant United States attorney assigned to this matter from sharing critical information with other government attorneys about the claims being brought on behalf of the United States.

**I.    The Protective Order imposes a "good faith" obligation to designate only confidential documents as classified, with further limits for AEO designations**.

1.    Documents which qualify as "Classified Information" under the Protective Order include "trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, … and other sensitive information that, if not restricted

---

[2] *See* Defendants' deposition notice for Plaintiff, attached as <u>Exhibit P-1</u>. The notice includes multiple topics relating to the factual bases for Plaintiff's claims.  Much of the principal evidence supporting Plaintiff's claims, however, are contained in Defendants' documents that are designated as AEO.  As Plaintiff wrote to opposing counsel on July 19, 2016, "The AEO issue is a real problem, because the Protective Order in place does not allow us to share AEO material with any client representatives (including ULoft's in-house lawyer), even when preparing for ULoft's 30(b)(6) deposition."

as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties."  Dkt. 49 at 3.

2.    For documents which fit within those parameters, the Protective Order imposes an additional restriction for documents which may be designated "Attorneys Eyes Only," which shall be reserved for information that is believed to be unknown to "any of the employees of a corporate party" or to an opposing party, such as formula and design information.  It imposes an obligation on parties to limit their Classified Information designations (including AEO) to information it "in good faith believes in fact is confidential."  Dkt. 49 at 2-3.

## II.    Defendants' inappropriate mass designations of documents as "AEO."

3.    From the outset of discovery, Defendants have engaged in a routine practice of globally designating virtually their entire document production as "Attorneys' Eyes Only," without regard to whether the documents they produced qualified under *any* category of Classified Information under the Protective Order.

4.    In AGS's initial production of 14,997 pages of documents through May 31, 2016, only 196 pages (a Bankruptcy Court order and a catalog) omitted the "AEO" designation. AGS's sweeping AEO designations included documents publicly filed with the Texas Secretary of State, several hundred pages of FAR Reports available at www.sam.gov, government forms and solicitations sent to potential bidders, documents which reveal the same information disclosed in Defendants' public filings in this cause and with various State agencies, and even company logos.[3]  Likewise, the entirety of Thurston's initial production of 1,539 documents was

---

[3] *E.g.*, AVTEQ 000247-72 (Texas Secretary of State public filings), 1004-1639, 3448-3911, 5514-5707 (FAR reports).  Defendants designated multiple documents which discuss the ownership of the Corporate Defendants as AEO, beginning with AVTEQ 000001, and required Plaintiff to file those documents with this Court under seal.  Not only was that information improperly designated AEO, Defendants themselves immediately disclosed the same information publicly in their response to Plaintiff's motion for partial summary judgment.  *Compare* Dkt. 91 at Ex. P-4 and P-9 (organizational chart and letter explaining corporate ownership) *with* Dkt. 104-1 at 3-4 (O'Donnell affidavit at ¶¶ 7-10).

designated AEO, a substantial portion of which consisted of blank pages, company logos (with no other text), and government forms and solicitations to potential bidders.[4]

5.      Similarly, KLN designated approximately 88,757 out of its initial 90,931 pages of production as AEO, including appliance manuals (e.g., multiple copies of Sony CD/DVD manuals), old catalogs and third party brochures dating back multiple years, publicly filed documents, and even documents created by *Plaintiff* (which KLN produced back with an AEO designation).[5]

6.      Many of the above examples have little relevance in this case, but are cited to illustrate Defendants' willful disregard of its obligations under the Protective Order entered by this Court.  In light of the AEO designations, several such examples are simultaneously being tendered for filing under seal as Exhibit P-5 through Exhibit P-11 (Sealed).[6]

7.      Thousands of the documents which Defendants have marked AEO, however, are of core relevance:  they are historical documents relating to government contracts which were *previously* awarded to Defendants, for projects *already* installed at military bases, and for which

---

[4] *E.g.*, Thurston 000086-87, 90-91, 110-11, 114-15, 122-23, 130 (blank pages), 94-95, 98-99, 102-03, 106-07, 118-19, 131, 155, 190, 194, 254-55, 257-58, 260-61, 263-64, 269, 277, 289-90, 294-97, 310, 417, 481-84, 486, 488-91, 494-97, 501-04, 506-08, 511-13, 515-16, 539, 641-43, 646-48, 651-54, 656, 658-61, 664-67, 671-72, 674-75, 687, 717-23, 730-36, 748-54, 761-67, 770-77, 781-88, 828-34, 837-43, 837-43, 857-63, 873-80, 886-92, 896, 899-905, 908-14, 926-32, 934-40, 976, 983, 986, 990, 993, 1003-05, 1010, 1014-15, 1018, 1033-40, 1056-63, 1066-73, 1076-83, 1089-90, 1093, 1117-24, 1135-42, 1147-54, 1160-67, 1171-78, 1184-91, 1195-1202, 1211-18, 1222-29, 1235-43, 1252-60, 1271-78, 1282-89, 1295, 1299-1306, 1310-17, 1325, 1334-40, 1347-53, 1358-64, 1372-78, 1385, 1389-90, 1393-95, 1489-97, 1503-04, 1508-09, 1513-14, 1518-20, 1524-27, 1535, 1537, 1539 (logos), 200-40 (third party brochures), 329-41, 363-414 (government forms and solicitations).

[5] *E.g.*, KLN 000106-14, 168-90, 333-44, 386-90 (publicly filed documents), 3238-63, 6315-22, 6342-49, 8962-9037 (catalogs / price books dating back to 2007), 1208, 1211-19, 1223, 1228, 1242-43, 1246-47, 1257-58, 1262-65, 2056-59, 2063, 2191-92, 2671, 3148, 3806-07, 3841-78, 4610-20, 4657-64, 4675-76, 4703-18, 4720-24, 4727-29, 4734-47, 4752-55, 4758-61, 4964-66, 5861-62, 5871-74, 5895-96, 5898-5901, 5904-14, 5922-32, 5933-44, 5951-64, 5967-78, 5983-84, 5991-6001, 6009-11, 9540-58, 10600-11, 10900-11, 10864-71, 10873-76, 11682-83, 12084-95, 12116-17, 13781-82, 15707-10 (third party manuals, swatches, brochures dating back to 2005, produced multiple times).

[6] Because of the voluminous nature the documents, Exhibit P-5 through Exhibit P-11 (Sealed) include only the first pages of FAR Reports, manuals, publicly filed records, and representative examples of other categories of non-sensitive documents, as described on the cover sheet of each.

presentment to the government has *already* been made (in violation of the False Claims Act). Disclosure of that information would not subject Defendants to competitive or financial injury in any *current* bid, so as to support Defendants' existing AEO designations.[7]

8.      Those historic records include pricing information that the Corporate Defendants in the past collusively shared with each other while bidding on the same government contracts, including admissions that John O'Donnell directed price adjustments among multiple Corporate Defendants, admissions that Defendants bid for government contracts set aside for Woman Owned Small Businesses, freight invoices and corresponding fraudulent markups through "Exceed Logistics," and use of untested furniture manufactured in Colombia (and fraudulently labeled as "Made in the U.S.A.").[8]

### III.   Plaintiff should not be required to make thousands of challenges to Defendants' abusive over-designations, undertaking Defendants' burden or invading privilege.

9.      As described in more detail below and in the certificate of conference, Plaintiff's counsel has repeatedly attempted to obtain Defendants' compliance with the Protective Order, and pointed out examples of obviously non-sensitive and public documents that Defendants have included in their global AEO designations.  Defendants refused to withdraw their global AEO

---

[7] *See, e.g., Defazio v. Hollister, Inc.*, 2007 WL 2580633 *2 (E.D. Cal. Sept. 5, 2007) ("Moreover, the very real specter of over-designation of 'attorneys' eyes only' information exists, and plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case. … Furthermore, a good bit of the information to be produced in this cause, and which in all probability will be designated 'attorneys' eyes only' will be historical in nature, i.e., of not much interest to a competitor who is primarily interested in the 'now.' Finally, the court has no reason to find at this time that plaintiffs lack the integrity to adhere to this protective order");  *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125 *7-8 (W.D. Mich. Feb. 9, 2009) ("Defendant's contention that its historical pricing information is a trade secret or confidential information, however, does not withstand scrutiny. … On the present record, the court could not possibly make a finding that defendant's price structures, especially with regard to historic prices, are trade secrets or should be given confidential treatment, nor could it identify a clearly defined and serious competitive injury to defendant.  A litigant's vague feeling of discomfort or its desire to hobble its opponent in litigation do not establish good cause.").

[8] When Plaintiff filed its motion to compel production from Lacy Lane (Dkt. 93), Plaintiff used Exceed Logistics markup examples that Plaintiff had obtained through FOIA requests or from third parties, because Defendants had marked their small production of Exceed Logistics documents as AEO.

designations or to re-designate.  In fact, in May 2016, Plaintiff requested again that Defendants' re-designate documents inappropriately marked as AEO by May 31, 2016. Instead, Defendants produced over 90,000 additional pages of documents on May 31, 2016, with each and every page designated as AEO.

10.     As an alternative solution, Plaintiff proposed that the parties tender a supplemental protective order that would reciprocally allow *both* sides to show AEO documents to their respective in-house counsel (who in turn would be bound by the terms of the Protective Order), and to representatives of the United States (in addition to the Assistant United States attorney assigned to this matter).   Entry of this supplemental protective order would have enabled Defendants to avoid, at this time, making a document-by-document re-designation of their production to comply with the Protective Order's parameters.

11.     Defendants, however, flatly refused this proposal and argued that the undersigned counsel for Plaintiff could simply disclose to Defendants each document that Plaintiff wishes to have re-designated.  In light of Defendants' global failure as producing party to make appropriate designations in the first instance, however, that procedure unfairly shifts the burden to Plaintiff either to make tens of thousands of challenges to Defendants' designations, or to reveal the specific documents the undersigned counsel considers to be material.

12.     Defendants' argument that Plaintiff should list each specific document it wishes to challenge is similar to the position rejected by the court in *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, where the defendant designated "a large volume of discovery documents with the AEO designation," including "approximately 70% of its initial production of 40,000 pages of material as AEO."[9]

13.     As in the instant case, the protective order in *Paradigm* provided "a mechanism

---

[9] 248 F.R.D. 598, 604 (D. Kan. 2008).

for challenging confidential designations."[10]  Unlike the instant case, the defendant in *Paradigm*

re-designated thousands of pages to remove AEO designations in response to the plaintiff's

complaints about overuse of the AEO designations.  Even after those re-designations, however,

the plaintiff submitted to the *Paradigm* court multiple "examples of documents which continue

to be designated as AEO when they obviously do not fit the definition of an AEO document."

The plaintiff filed a motion challenging the global designation of the remaining 14,000

documents still designated as AEO.[11]

      14.    In light of the defendant's large volume of AEO designations and its failure to

designate in good faith, the *Paradigm* court held that the plaintiff was *not* required to "list **each**

designation that it challenges in its motion," nor to list "specific, 'designated' documents" it

believed were improperly designated:

> "[Defendant] Celeritas' suggestion that the wording of the protective order
> precludes any challenges except those referring to specific 'designated' documents
> is also not persuasive.  Implicit in the protective order and its provision for
> designating documents as 'confidential' or 'AEO is a requirement of good faith.
> [Citation omitted.]  Nothing in the protective order precludes [plaintiff] Paradigm
> from asserting a lack of good faith by Celeritas in reviewing the documents and
> using the AEO label to impede Paradigm's case preparation.
>
> … However, the record before the court suggests that appropriate review
> was not conducted by Celeritas when it first designated large volumes of documents
> as AEO.  For example, in its first production of 40,000 pages, Celeritas designated
> such innocuous documents as (1) blank pieces of paper, (2) directions to Celeritas'
> office, and (3) emails prepared by Paradigm employees.  …  The record simply
> does not support Celeritas' argument that it conducted a thorough review before
> designating documents as AEO."[12]

The court emphasized, "The duty of good faith in the protective order is a duty to review the

documents in good faith **before** designating them as AEO."  Finding that the defendant "adopted

---

[10] 248 F.R.D. at 604.

[11] *Id*.

[12] 248 F.R.D. at 605 (italics and bold-type emphasis in original).

a cavalier approach in designating large volumes of documents as AEO," the *Paradigm* court granted the plaintiff's request for "An order directing Celeritas to read its own documents and justify in writing each document designated as AEO."[13]  The court compelled the defendant to produce a log to plaintiff with an "explanation for each document designated as AEO."[14]

15.     Defendants' failure to make good-faith designations is even more manifest here than in *Paradigm*.  In Defendants' initial production of over 100,000 documents through May 31, 2016, AGS designated over 98% of its production as AEO, KLN designated over 97% as AEO, Thurston designated 100% as AEO, and Dehler designated over 84% as AEO.  Similar to *Paradigm*, and as described above and shown in the examples attached as Exhibits P-5 through P-11, Defendants labeled as "Attorneys' Eyes Only" blank pieces of paper, company logos, documents publicly found on government websites, and other plainly non-sensitive documents.

16.     As in *Paradigm*, Defendants should not be permitted to shift the burden to Plaintiff to make tens of thousands of challenges, where Defendants themselves have engaged in a near complete failure to comply with the Protective Order's good-faith requirement.  For example, Defendants' "Attorneys' Eyes Only" designation of seven copies of a Sony DVD/CD manual are indefensible under the Protective Order.[15]  Under Defendants' approach (and as a consequence of their global designations), Plaintiff would either have to include of challenges to the thousands of such inconsequential documents which Defendants have marked AEO (if Plaintiff wishes to avoid disclosing the specific documents it plans to discuss with its client), or to focus its designation challenges on the specific AEO documents that counsel considers

---

[13] *Id*. (italics and bold-type emphasis in original).

[14] 248 F.R.D. at 605-06 & n. 23 (in addition, the court required Celeritas to provide "replacement copies of all documents with current designations" for all de-designated AEO documents, to avoid "great confusion," and unnecessary burden to the plaintiff).

[15] KLN 004734-45, 005933-44, 005951-62, 010600-11, 010900-11, 012084-95.  The same manual that Defendants designated AEO is obtainable online:  https://docs.sony.com/release//DVPSR210P.pdf.

material to the case (giving Defendants a blueprint of the specific evidence that Plaintiff intends to discuss with his client).

17.     The very few documents that Defendants did *not* designate as AEO in their initial production through May 31, 2016 include heavily redacted materials that strip away all substance, Mapquest directions, blank government forms, third party logos (e.g., Twitter and Facebook), and other information of little or no relevance.  As in *Paradigm*, Defendants are "using the AEO label to impede" case preparation.  That global tactic has prevented undersigned counsel from discussing substantially all of the material historical evidence produced by Defendants with his client, and from preparing Plaintiff's corporate representative to testify on the bases for Plaintiff's claims as shaped by Defendants' production.

18.     Defendants' failure to make appropriate designations of their documents in the first instance flagrantly violates the terms of the Protective Order.  In light of their failure to properly comply with the Protective Order in good faith, their global AEO designations should be stricken.[16]   Alternatively, the approach adopted by the court in *Paradigm*, compelling Defendants to itemize and justify in a written log produced to Plaintiff "each document designated as AEO," keeps the burden and "duty to review the documents in good faith" on Defendants, as well as Defendants' burden prove that each such document warrants the AEO designation they have assigned it.[17]

---

[16] *Compare Brown v. Tellermate Holdings Ltd.*, 2014 WL 2987051 *24, 26 (S.D. Ohio July 1, 2014) ("The documents produced by [defendant] Tellermate in April, 2013 and designated as attorneys'-eyes'-only may be used by the Browns without restriction, subject to Tellermate's ability to redesignate particular documents as confidential under the existing protective order, provided it does so within fourteen days and has a good faith basis for so designating each particular document," explaining that the plaintiffs "do not have proper access to the attorneys'-eyes-only documents," despite producing party's "burden to articulate and to prove, by competent evidence, its claim of harm which would result if any of the documents were viewed by the Browns," and assessing attorneys' fees under Rule P. 37(a)(5).).

[17] 248 F.R.D. at 605.

WHEREFORE, University Loft respectfully requests that the Court grant Plaintiff's motion to strike Defendants' "Attorneys' Eyes Only" designations of documents they produced in this cause, or compelling Defendants to produce to Plaintiff an itemized log explaining the justification for each document designated as AEO within fourteen days of the Court's order. Plaintiff further requests such other relief, in law or in equity, to which it may be justly entitled.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200,
Austin, Texas 78701
(512) 480-5653 Telephone
(512) 480-5853 Telecopy

By:    _/s/ Steven D. Smit_____
Steven D. Smit
State Bar No. 18527500
ssmit@gdhm.com
Eric G. Behrens
State Bar No. 02050700
ebehrens@gdhm.com
Brian T. Cumings
State Bar No. 24082882
bcumings@gdhm.com

ATTORNEYS FOR UNIVERSITY LOFT COMPANY

## CERTIFICATE OF CONFERENCE

This is to certify that Plaintiff's counsel has made a good-faith attempt to resolve this dispute by agreement, and that no agreement could be made.  In addition to multiple telephone conferences, this firm e-mailed counsel for Defendants on May 11, 2016, stating "that Defendants improperly categorized many documents in bulk as AEO – including in some instances publicly filed documents — without making any real effort to determine if the documents are actually 'classified information' (let alone appropriately AEO)," and requested reconsideration of the designations by May 31, 2016.  The undersigned counsel followed up with a letter to counsel dated May 18, 2016 (attached hereto as <u>Exhibit P-2</u>), again challenging Defendants' improper global AEO designations, and reiterating the request.  Undersigned counsel raised the issue again in subsequent telephone conferences.  After Defendants' previous counsel withdrew, the undersigned counsel had additional conversations with Defendants' current counsel about removing inappropriate AEO designations, and designating in accordance with the Protective Order.  As quoted above in text, the undersigned conferred about the AEO issue in writing again on July 19, 2016, and proposed the supplemental Protective Order (with reciprocal access to AEO documents by the parties' respective in-house counsel) as a means of addressing that issue.  The July 19 portion of the e-mail chain, addressing the AEO issue, and its attachment, are at <u>Exhibit P-3</u>.  Defendants' responded on July 22, 2016, attached as <u>Exhibit P-4</u>.

<i>/s/ Steven D. Smit</i>
Steven D. Smit

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing has been served on the counsel of record identified below in a manner authorized by the Federal Rules of Civil Procedure on the 28th day of July, 2016:

Frank Wright
James Collura
Justin Scott
COATS ROSE, P.C.
14755 Preston Road, Suite 600
Dallas, Texas  75254
fwright@coatsrose.com
jcollura@coatsrose.com
jscott@coatsrose.com

<i>/s/ Steven D. Smit</i>
Steven D. Smit

# EXHIBIT P-1

Defendants' notice of Plaintiff's corporate deposition

**In support of "Plaintiff's (Opposed) Motion to Strike Defendants' Global
'Attorneys' Eyes Only' Designations, or Alternatively, for Itemized Log"**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex. rel.* UNIVERSITY LOFT COMPANY | § § § § | |
| Plaintiff, | § § | Civil No. 14-CV-528-OLG |
| v. | § § | |
| AGS ENTERPRISES, INC. D/B/A AVTEQ, INC., KLN STEEL PRODUCTS, CO. LLC, FURNITURE BY THURSTON, INC., DEHLER MANUFACTURING, INC., JOHN O'DONNELL and KELLY O'DONNELL | § § § § § § § | |
| Defendants. | § § | |

**DEFENDANTS' NOTICE OF INTENT TO TAKE THE
ORAL AND VIDEOTAPED DEPOSTION OF THE CORPORATE
REPRESENTATIVE OF UNIVERSITY LOFT COMPANY**

TO:   Plaintiff University Loft Company, by and through its attorneys of record, Graves, Dougherty, Hearon & Moody, P.C., 401 Congress Avenue, Suite 2200, Austin, Texas 78701.

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendants AGS Enterprises, Inc. d/b/a Avteq, Inc., KLN Steel Products, Co. LLC, Furniture by Thurston, Inc., Dehler Manufacturing, Inc., John O'Donnell and Kelly O'Donnell will take the oral deposition of the Corporate Representative of Plaintiff University Loft Company at the offices of Coats|Rose, P.C., 1020 Northeast Loop 410, Suite 800, San Antonio, Texas 78209 on July 14, 2016. The deposition will begin at 9:00 a.m. and will continue from day-to-day until completed. The deposition will be recorded stenographically and will also be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Deponent must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on behalf of Deponent, with respect to all matters listed on the attached Exhibit A, and set forth, for each

4814-5666-4627.v1

individual designated, the matters on which the individual will testify. Such designated person(s) must testify about information known or reasonably available to Deponent. Deponent is requested to make such designations(s) a reasonable time before the deposition, and not less than five (5) days before the deposition.

Respectfully Submitted,

COATS | ROSE, P.C.
14755 Preston Road, Suite 600
Dallas, Texas 75254

By:     /s/ James A. Collura, Jr.
        Frank J. Wright
        State Bar No. 22028800
        fwright@coatsrose.com
        James A. Collura, Jr.
        State Bar No. 24044502
        jcollura@coatsrose.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing has been served on the counsel of record identified below in a manner authorized by the Federal Rules of Civil Procedure on the 20th of June, 2016:

Steven D. Smit
Eric G. Behrens
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Ste. 2200
Austin, Texas 78701
Telephone: (512)480-5653
Facsimile: (512)480-5853
Email: ssmit@gdhm.com
Email: ebehrens@gdhm.com

**ATTORNEYS FOR PLAINTIFF**
**UNIVERSITY LOFT COMPANY**

*/s/ James A. Collura, Jr.*
JAMES A. COLLURA, JR.

## Exhibit A – Deposition Topics

1.      All communications re: U-Loft's disclosure statement to U.S. Government related to Defendants.

2.      GSA Protests filed by ULoft related to Defendants.

3.      All communications with GSA re: bids submitted by Defendants.

4.      All communications with GSA re: projects awarded to Defendants.

5.      Defendants' 2013 representations to Clay Weisenberger re: common ownership.

6.      ULoft's communications with GSA re: bids submitted by Defendants, including but not limited to all communications with Clay Weisenberger.

7.      ULoft's bidding process on government contracts.

8.      HJA's alleged manufacture of furniture under government contracts awarded to Defendants.

9.      All claims for payment by Defendants involving furniture supplied by HJA.

10.     Tupelo's manufacture of furniture under government contracts awarded to Defendants.

11.     All claims for payment by Defendants involving furniture supplied by Tupelo.

12.     All RFQs where Defendants allegedly engaged in bid-rigging.

13.     All IFBs where Defendants allegedly engaged in bid-rigging.

14.     Defendants' alleged submission of false freight invoices through Exceed Logistics.

15.     All claims for payment by Defendants allegedly involving false freight invoices.

16.     Defendants' alleged padding of auxiliary items.

17.     All claims for payment by Defendants allegedly involving padding of auxiliary items.

18.     Defendants' transactions with Transformations, including alleged kick-back payments.

19.     Thurston's contract for Buildings 1466 and 1467 at 29 Palms, including alleged involvement of Parron Hall.

20.     All transactions between Defendants and the U.S. Gov't involving cancellation penalties, including but not limited to the 2009 Yakima contract award.

21.     Defendants' alleged substitution of non-conforming fabric.

22.     Defendants' alleged submission of non-conforming steel.

23.     Defendants' alleged submission of products that did not meet contract specifications.

24.     All claims for payment by Defendants allegedly involving non-conforming products.

25.     Defendants' alleged misrepresentation of entities as veteran-owned, disadvantaged, and/or woman-owned small business.

26.     All contracts awarded to Defendants involving misrepresentations of entities as veteran-owned, disadvantaged, and/or woman-owned small business.

27.     All claims for payment by Defendants allegedly involving misrepresentations of entities as veteran-owned, disadvantaged, and/or woman-owned small business.

28.     All contracts that Plaintiffs would have been awarded where it was the low bidder (other than Defendants) and would have been awarded the contract absent Defendants alleged tortious interference.

29.     Communications with Les Singleton re: claims against Defendants.

30.     Communications with Tonya Pons-Galjour re: claims against Defendants.

31.     Communications with Jan Hines re: claims against Defendants.

32.     Communications with David Fyffe re: claims against Defendants.

33.     Communications with Allyn Burkett re: claims against Defendants.

34.     Communications with Josh Hamel re: claims against Defendants.

35.     Damages sought on behalf of U.S. Gov't for alleged violations of FCA.

36.     Damages sought on behalf of ULoft for alleged Sherman and Clayton Act violations.

37.     Damages sought on behalf of ULoft for alleged tortious interference.

# EXHIBIT P-2

Plaintiff's letter dated May 18, 2016



**GRAVES DOUGHERTY HEARON & MOODY**

A PROFESSIONAL CORPORATION

**Steven D. Smit**
512.480.5653
512.480.5853 (fax)
ssmit@gdhm.com

Mailing Address:
P.O. Box 98
Austin, TX 78767-9998

May 18, 2016

*Via e-mail to bpena@hslawmail.com*
V. Blayre Peña
HANCE SCARBOROUGH, LLP
400 W. 15th, Suite 950
Austin, Texas 78701

Re:     Case No. SA-14-CA-0528-OG; *United States of America ex rel. University Loft Company v. Avteq, Inc., et al*; In the United States District Court, Western District of Texas, San Antonio Division

Dear Blayre:

This letter is to once again to follow up on Defendants' continued failure to comply with their discovery obligations. Most of these issues have been the subject of numerous verbal and written communications over the past few months but still have not been resolved. As discussed below, these issues include (a) evading fully responding to legitimate discovery requests, (b) producing only a small fraction of the responsive documents, (c) withholding documents without providing a privilege log as to those withheld documents and (d) designating the vast majority of documents that have been provided as "Attorney Eyes Only" without any apparent regard as to whether the documents are truly AEO.

To facilitate production we have again agreed to narrow the scope of discovery we are seeking, and request that you advise us by Monday, May 23, 2016, whether you intend to produce the information discussed below by May 31, 2016 (the deadline by which you promised to complete production).

1. *HJA- Colombia.*

Allyn Burkett and Les Singleton both testified that Avteq used HJA product from Colombia prior to 2012, in connection with at least the projects at Hunter in Savannah, at Yuma Proving Grounds and at the Colombian Embassy. Import records confirm that Avteq was importing product from Colombia during that time frame. We have specifically asked about Hunter and Yuma. Request Nos. 59-60. We also have specifically asked Avteq for the documents regarding the use of HJA during that pre-2012 time period. See Request Nos. 15-20, 51, and 52. Avteq indicated in its objections to Request No. 17 (but not in its other responses)

V. Blayre Peña
May 18, 2016
Page 2

that documents prior to pre-2009 regarding HJA were being withheld because they are outside the statute of limitations.  As we discussed, the statute of limitations for the Relator in FCA actions is 6 years if the U.S. does not intervene. This lawsuit was filed in 2014, so your limitations objection clearly would not apply to claims beginning in 2008.  More importantly, the statute of limitations for the U.S. is 3 years after learning of the fraud.  Since the U.S. can intervene at any time and the U.S. clearly did not know about the fraud until 2014, limitations has not run on any claims by the U.S. relating to HJA, should it intervene.

      After discussing this matter with you and Terry, you agreed to provide these documents. However, the documents still have not been provided.  If you no longer agree to provide the pre-2009 HJA documents that are responsive to Request No. 17, then provide a privilege log listing these withheld documents and why they are being withheld as we repeatedly requested. Also, please confirm by May 23, 2016 that  you will provide all HJA documents that are responsive to Request Nos. 15, 16, 18, 19, or 20 by May 31, 2016.

      We also recently learned through Leonard Dear and Willie Adcock that the Avteq Group Defendants have been using HJA in Colombia to manufacture furniture for Government projects *after* 2012. Mr. Dear testified that he was instructed to ship stickers to HJA in Columbia representing that the products were made in the U.S.A., and he produced various documents, including emails relating to the product being shipped from Colombia. His deposition testimony also establishes that there are numerous emails and other documents relating to this use of HJA. We have not received any those documents, though they are responsive to our requests.  We also have not received any testing documents showing that the furniture from Colombia was tested as required, even though testing documents were specifically requested.  See Request No. 25 for Avteq, and Request No. 18 for KLN, Dehler and Thurston.

      None of the Defendants ever disclosed to the United States in their FAR Certifications prior to March 2016, that they were using HJA in Colombia to provide products for government facilities. It is clear Defendants only amended their FAR certifications in March 2016 to show production in Colombia for the first time, because they got caught red-handed. Documents regarding use of HJA products after 2012 are responsive to at least Request Nos. 16, 19 and 20, 51 and 52 for Avteq, Request Nos. 42 and 43 for KLN and Dehler, and Request Nos. 46 and 47 for Thurston.. Avteq did not state it was withholding any documents about HJA that are responsive to Requests Nos. 16, 19 and 20.  However it indicated that some unidentified documents are being withheld as to Request Nos. 51 and 52.  KLN, Dehler and Thurston indicated that some unidentified documents are being withheld as to as to the Requests to them. Please list the withheld documents on a privilege log (to the extent they relate to issues 1-8) with a reason as to why they are being withheld.[1]  Otherwise, please produce all HJA documents responsive to those Requests

---

[1] To be clear, we are not asking that Defendants place documents on the privilege that are not relevant to the issues raised in this letter, as described in Issue No. 9 below.

V. Blayre Peña
May 18, 2016
Page 3

2. *Exceed Logistics*

Testimony and document production show that Defendants used various shipping companies to transport furniture to military bases, and then used "Exceed Logistics" to inflate the freight charges paid by the United States. Only after Davidson testified in deposition that the funds were funneled through the bank account of Lacy Lane, Lacy Lane filed an assumed name certificate for "Exceed Logistics." As you know, we subpoenaed records from Lacy Lane regarding Exceed Logistics. Lacy Lane provided some documents but objected on relevance grounds to producing many other documents. It also has failed to produce numerous documents, including the freight invoices paid through the Lacy Lane account or the actual Exceed invoices that were provided to Defendants (and the Government) and paid. Defendants admitted in Dkt. 69 (filed April 8, 2016) that Defendant "John O'Donnell is 100% owner of Lacy Lane." He is also Lacy Lane's Director and Member. Documents and information relating to Lacy Lane are within his possession, custody, and control. While we will follow up directly with the attorney for Lacy Lane about these issues, Defendants are not excused from responding fully to the Interrogatories and Requests that specifically address Exceed Logistics. KLN provided some information about payment of Exceed Logistics' invoices in its interrogatory responses and Avteq provided some documents regarding Exceed Logistics invoices. However, the information we received from Defendants about Exceed Logistics is by no means complete. Please confirm by May 23, 2016 that all responsive information and documents relating to Exceed Logistics will be produced by May 31, 2016.

3. *Collusive Bidding*

Deposition testimony, emails, and notes on draft spreadsheets (primarily received in response to the Tonya Singleton subpoena) show that the Avteq Group Defendants shared pricing and other information when submitting bidding as competitors on the same projects. According to the testimony, that occurred on every project where more than one Defendant bid on the same project after June 2012. We specifically requested that Defendants produce all documents regarding each of those projects. See Request No. 36 for Avteq, Request No. 27 for KLN and Dehler, and Request No. 31 for Thurston. We also requested all documents relating to John or Kelly O'Donnell's review of those bids. See Request Nos. 37-39 for Avteq, Request Nos. 28-30 for KLN and Dehler, and Request Nos. 32-34 for Thurston. When Defendants claimed they did not have information to make this determination as to projects that were not awarded to one of the Defendants, we agreed to limit the above requests regarding multiple bids to instances where defendants submitted multiple bids on the same project and one of the defendants was subsequently awarded the contract for that project.. These include, but certainly is not limited to the projects specifically identified in Paragraph 51 of the Complaint that are the subject of Request No. 40 for Avteq, Request No. 31 for KLN and Dehler, and Request No. 35 for Thurston.

Obviously, this information about projects where Defendants submitted more than one bid is very relevant to the FCA claims involving collusive bidding as well as to ULoft's personal

V. Blayre Peña
May 18, 2016
Page 4

claims, such as the Antitrust claims.  In fact, Uloft has no other practical way of determining whether a particular project awarded to a Defendant was the subject of collusive bidding or whether this collusive bidding involved projects where ULoft was an unsuccessful bidder.  This issue also directly impacts the scope of ULoft's production to Defendants.  As you know, Defendants have requested that ULoft produce its damages calculations and other financial information about projects it claims were lost because of Defendants' tortious conduct.  We cannot gather and produce this information (or provide an expert opinion regarding damages) until we know which projects were the subject of possible collusive bidding.

Despite our voluntary limitation on the scope of projects , Defendants have continued to refuse make this identification and produce the documents, making the baseless argument that they do not have information to identify even this narrower scope of projects.  Instead, you have given us a publicly-available spreadsheet of awards to Defendants that has over 800 entries.  As we pointed out, there is no way to identify from this spreadsheet, the projects upon which more than one Defendant submitted a bid, the names or locations of the projects or even the RFQ Nos. associated with the projects.  We request again that confirm by May 23, 2016 that Defendants will provide the identification of projects where defendants submitted multiple bids on the same project and one of the defendants was subsequently awarded the contract for that project; and will produce the responsive documents regarding those projects by May 31, 2016.

Along those lines, as we discussed previously, we know from Jan Hines that she kept hard copies of documents for all projects upon which she was working in notebooks at KLN. These were in the carrels just down from Willie Adcock's desk.  She stated that she made handwritten notes on these hard copies (such as spreadsheets) about bids and John O'Donnell providing instructions about the bids.  We once again ask you to confirm the status of these Notebooks by May 23, 2016 and provide them by May 31, 2016.  If they no longer exist, please provide an explanation by May 23, 2016 as to why they no longer exist and when they were discarded.

Also, we specifically requested information from Defendants about representations made to the United States they were "separate."  See Request Nos. 32-35 for Avteq, Request Nos. 23-26 for KLN and Dehler, and Request Nos. 27-30 for Thurston.  Please confirm by May 23, 2016 that all responsive documents to these requests will be produced by May 31, 2016.

4. *Woman Owned Small Business (WOSB)*

Defendants have denied various Requests for Admission regarding WOSB issues, essentially contending that Kelly O'Donnell or other women owned at least 51% of the corporate Defendant during particular time periods.  However, this is directly contrary to the organizational chart that each of the corporate Defendants referenced in its sworn response to Interrogatory No. 3 (KLN 00001).  This purported direct ownership by Kelly O'Donnell or other women is also not reflected in any of the documents produced that are responsive to Request Nos. 1-3. If Defendants are now changing their story and saying their sworn responses to Interrogatory No. 3

V. Blayre Peña
May 18, 2016
Page 5

are not true and the chart is not accurate, then please provide the documents that purport to show this direct ownership (and changes in ownership) by May 31, 2016. This includes the tax return information relating to ownership such as K-1s etc. for each applicable year for each corporate defendant (i.e. 2005–present for Avteq, 2012- present for other Corporate Defendants).

Also, Defendants have objected to Interrogatory No. 19 (Second Set of Interrogatories) and refused to provide information, claiming that "unsuccessful bids are wholly irrelevant." This simply is not the case. The fact that Defendants would knowingly lie to the United States in submitting bids on contracts set-aside for WOSBs when they are not WOSBs is highly relevant. Please withdraw your objection and identify those bids. Defendants also objected to Interrogatory 20 (identifying WOSB Contracts they were awarded), arguing it would be too burdensome, because Defendants have been awarded hundreds of projects. This argument is specious especially regarding the WOSB issue. A project that was a WOSB "set aside" or involved preferential treatment for a WOSB will be noted specifically in the RFQ, invitation for bid or similar government request regarding that project (usually on the first page). Please confirm by May 23, 2016 that Defendants will complete their diligent search by May 31, 2016 and identify these awards.

### 5. *Tupelo Manufacturing*

The testimony and documents show that the Defendants were using Tupelo Manufacturing in Mississippi to manufacture product for government facilities beginning in or around October 2013 and passing off this furniture as being manufactured by KLN or Thurston at a considerable markup. We also have testimony that this furniture may not have been tested as required, and that testing results submitted to the United States were actually for different furniture. We have specifically requested information and documents from each Avteq Group Defendant regarding use of Tupelo Manufacturing. See Interrogatory No. 4, Request Nos. 21-27 for Avteq and Interrogatory No. 3, Request Nos. 14-19 for KLN, Dehler and Thurston. We further requested testing information. See Request No. 25 for Avteq, and Request No. 18 for KLN, Dehler and Thurston.

While we have received some documents regarding Tupelo, we believe the documents are incomplete. For example, Tupelo was represented as affiliated with the Avteq Group. If that were true, there should be documents relating to that affiliation (i.e. contracts, acquisition agreements, etc.). Moreover, the use of Tupelo appeared to be widespread after October 2013. KLN, however, identified only two Purchase Orders in its Interrogatory Responses relating to Tupelo and answered "None" when asked to provide testing documents (Request No. 18) or documents relating to representations that furniture from Tupelo was manufactured by KLN. (Request No. 19). The exhibits to the Adcock deposition contradict those answers.

We understand from Defendants' objections that there may be documents relating to Tupelo involving non-governmental projects. We agree to limit the scope of the discovery requests to specifically exclude those documents. With that limitation, please confirm by May

V. Blayre Peña
May 18, 2016
Page 6

23, 2016 that you will provide by May 31, 2016, all of the requested information regarding Tupelo that is responsive to the interrogatories and requests mentioned above.

### 6. *Markup of Ancillary Items*

David Fyffe and Les Singleton both provided sworn statements that Defendants marked up the cost of auxiliary items provided to the United States. We have specifically requested that Defendants identify auxiliary items provided to the United States, and the vendors of those items. See Interrogatory 15 for Avteq and Interrogatory 14 for KLN, Dehler and Thurston. Obviously, Defendants have provided auxiliary items many times to the United States, but they state in their responses (under oath and without any objections) that they cannot identify this information. This simply is not true. All such information is within their possession, custody, and control. Please confirm by May 23, 2016 that you will amend those answers and provide the information by May 31, 2016.

We also specifically requested documents relating to the mark-up of auxiliary items. See Request No. 49 for Avteq, Request No. 40 for KLN and Dehler, and Request No. 44 for Thurston. Even more specifically, we requested documents about particular mark-ups alleged in Paragraphs 68 and 70 of the Complaint. See Request Nos. 53-54 for Avteq, Request Nos. 45-46 for KLN, Request Nos. 44-45 for Dehler, and Requests No. 48 - 49 for Thurston. Furthermore, we know that Fyffe, as CFO, created project scorecards regarding each project that would show any markups of auxiliary items. We requested these projects scorecards (and related document), and similar spreadsheets. Request No. 50 for Avteq, Request No. 41 for KLN and Dehler and Request No. 45 for Thurston. Defendants have not provided any documents responsive to these requests and appear to take the position that they are unable to find any responsive documents. This cannot be true. For example, regarding the project scorecards, even if Defendants deleted all of Fyffe's physical and electronic files, including all of his email, copies of these documents would be on the central server and also in the emails for other officers, including John O'Donnell and Kelly O'Donnell. This does not include similar documents that were prepared by CFOs (such as Sean Olds) who succeeded Fyffe. If Defendants still contend they have no responsive documents, please describe the "diligent search" that was conducted by May 23, 2016. If the Defendants now have responsive documents please, confirm this by May 23, 3016 and produce them before May 31, 2016.

### 7. *Cancellation Payment*

We have testimony from Les Singleton establishing that Avteq fraudulently procured a cancellation payment(s) in connection with Yakima and/or Fort Gordon and even submitted fake photos to support its claim. Avteq seems to admit as much by blaming Les Singleton for orchestrating the collection of this payment. We specifically requested all documents regarding the cancellation payment and contracts. Avteq Request Nos. 57-58. At this point, Avteq has only produced 2 invoices for the payment and a transmittal email. Obviously, there are many more documents regarding this matter, including but not limited to the RFQ(s), Avteq's bid packet(s),

V. Blayre Peña
May 18, 2016
Page 7

Acquisition and Supply Records, Accounting Records, and supporting documentation (photos etc.) regarding the award, the cancellation and the cancellation payment. These documents must exist regardless of whether the payment was legitimate or obtained by fraud. Please confirm by May 23, 2016 that you will provide all documents regarding the cancellation payments and the underlying Contract(s) by May 31, 2016.

### 8. *Nonconforming Products*

We have testimony establishing that Defendants may have intentionally substituted nonconforming products that did not meet RFQ specs. We specifically requested documents relating to this matter. See Requests Nos. 65-66 for Avteq, Request Nos. 53-54 for KLN, Request Nos. 55-56 for Thurston and Request Nos. 50-51 for Dehler. Please confirm by May 23, 2016 that you will produce all responsive documents to these Requests by May 31, 2016.

As a specific example, we have alleged that KLN used thinner gage steel than required by the RFQ specs by gaming tolerance levels. We specifically requested information about communications with KLN's steel suppliers relating to this matter. Request No. 44 to KLN. KLN objected to this Request and withheld documents, claiming, among other things that the information was "trade secret." Because we have a Protective Order in place, please produce all of the documents responsive to KLN Request No. 44 by May 31, 2016. If you still refuse to produce them, then place them on the privilege log and state why they are being withheld.

### 9. *Withheld Documents and Privilege Log*

We have specifically asked that Defendants confirm if they are withholding documents based on objections. We have also repeatedly requested that Defendants provide a privilege log for their own documents (not just a log for the documents produced by Les Singleton in response to the subpoena). For example, my email to you dated March 8, 2016 made the following request:

> Regarding withheld documents, please confirm that, unless expressly stated in Defendants' Responses to Request for Production that documents are being withheld, no documents are being withheld subject to the objections being made. For responses in which Defendants did state that documents are being withheld, please provide a log of the documents being withheld, or provide the withheld documents.

Neither of these issues have been addressed. Please confirm by May 23, 2016 that you will provide a privilege log for the documents being withheld by May 31, 2016. Also, as we previously requested, please confirm by May 23, 2016 that no documents are being withheld based on objections unless expressly stated. For clarity, we are not asking for documents you are withholding on relevance grounds, unless those documents concern Issues 1-8. In other words, if some of the "Accounting Records" were withheld based on a relevance objection, we do not

V. Blayre Peña
May 18, 2016
Page 8

expect you to list those documents on a privilege log if they do not relate to Issues 1-8.

10. *Improper Use of AEO designation*

As we previously discussed with you, Defendants have designated the vast majority of documents as Attorneys' Eyes Only. It is clear to us that Defendants improperly categorized many documents in bulk as AEO — including in some instances publicly filed documents — without making any real effort to determine if the documents are actually "classified information" (let alone appropriately AEO). As you know, it is Defendants' burden to properly designate in the first place, rather than labeling everything AEO and trying to shift the burden to Plaintiff to debate each inappropriate designation. Please confirm by May 23, 2016 that you will review Defendants' document production and remove the AEO designation as to documents that are not AEO by May 31, 2016.

We have also reviewed your designation of deposition transcripts as AEO. We believe that the AEO designation was applied too broadly to certain testimony in those depositions, and would like to set up a time this week for a phone call to walk through the AEO designations in the transcripts. Please let us know when you or Terry are available.

11. *Emails*

There is no doubt that Defendants have a huge amount of responsive email communications. For example, in your email to me on February 22, 2016, you indicated that you have "the entire email box for Burkett and Hamel," as well as the email sets for Willie Adcock and Cheryl Davidson. You also mentioned in your letter dated March 9 that you have the email boxes for John and Kelly O'Donnell.

We understand that review and production of email from PST files of key personnel takes time. However, you apparently did not even begin reviewing these files until late February – over 3 months after we served our discovery requests.[2] We now have been waiting months, and have yet to receive the responsive email from the PSTs you mentioned. Moreover, we also requested in March that you confirm you have possession of the PST files for other key witnesses who worked with the Avteq Group, including David Fyffe, Jan Hines and Sean Olds, and that you provide a schedule as to when the responsive emails for each individual would be produced if they were going to be produced on a rolling basis. We have not received this confirmation or the responsive emails. To be clear, we are not asking for all emails. At this time, we are only asking for emails that relate to Issues 1-8 above. Please confirm by May 23, 2016, that you will finish reviewing all relevant email boxes and produce the responsive emails by May 31, 2016.

---

[2] In your March 9 letter that "I actually attempted to begin reviewing Allyn's PST file on February 29." Putting aside the fact that you waited three months "to begin" reviewing the Burkett emails for production, we are concerned that Defendants still have not produced the responsive emails from the Burkett PST or from any of the other PSTs mentioned above.

V. Blayre Peña
May 18, 2016
Page 9

12.  _Government Contracts and Project Folders (Acquisition and Supply Records)_

We requested a copy of all Government Contracts between Defendants and the United States.  See Request No. 14 for Avteq, and Request No. 13 for KLN,  Dehler and Thurston. Avteq did not object to this Request but asserted that most of the information was lost due to a "coffee spill."  We address that issue below. The other Defendants objected to producing the Government Contracts. As explained elsewhere, each Government Contract awarded to the Defendants during the applicable time frame is very relevant to both the FCA Claims and ULoft's personal claims.   Please withdraw the objections by May 23, 2016 and provide  copies of the contracts by May 31, 2016.

We originally requested production of all Acquisition and Supply Records for each project bid by one of the Defendants. Request No. 52 for Avteq, Request No. 43 for KLN and Dehler, and Request No. 47  for Thurston.  After discussions with you, we agreed to limit the requests to Acquisition and Supply Records for projects that were actually awarded to one of the Defendants during the applicable time frames.  Defendants then suggested that University Loft has only complained about approximately 57 Projects (without identifying those projects) and that Defendants believed it was too burdensome to produce all of the  records for any other projects. As we have repeatedly stated, we do not understand how you arrived at 57 Projects. Moreover, the Projects specifically identified by name in the Complaint are only examples and are not the only projects at issue.

The actionable fraud and/or collusive bidding alleged by University Loft potentially involves every contract awarded in the time frame identified below.  Nevertheless, we are willing at this point to limit our discovery requests for Acquisition and Supply Records to records relating to Issues 1-8 above.  Please confirm by May 23, 2016 that you will produce those records by May 31, 2016.

13.  _Ledgers/Invoices/Payment Documents (Accounting Records)_

We originally requested production of all Accounting Records for each project bid by one of the Defendants. Request No. 51 for Avteq, Request No. 42  for KLN and Dehler, and Request No. 46 for Thurston. We then agreed to limit the requests to Accounting Records for projects that were actually awarded to one of the Defendants.

You told me earlier that the financial records (i.e. vendor payment records, invoices, purchase orders, receipts, payment records, receivables etc.) that were generated in fulfilling a contract are in different files than the bid information for that contract. To expedite discovery, we proposed that Defendants other than Avteq provide their general ledgers since June 2012 as AEO in electronic format by awarded project, and that Avteq (AGS) produce its general ledgers since 2005 in electronic format by awarded project.  We then said we would identify specific entries where we wanted to see the supporting data such as invoices etc.  Defendants did not

V. Blayre Peña
May 18, 2016
Page 10

agree to this proposal.  We re-urge this proposal.  Please confirm by May 23, 2016 whether Defendants will agree to produce the general ledgers as indicated.  If Defendants do not agree, then please confirm that you will produce the Accounting Records responsive to the requests identified above for each awarded project by May 31, 2016.

    14.  *"Coffee spill."*

We have repeatedly requested information about the data on Allyn Burkett's computer that Avteq claimed was irretrievably lost due to a coffee spill.  In her deposition, Ms. Burkett dispelled any notion that files were lost as a consequence of this April 2015 "coffee spill."  For example, she testified that immediately after the spill, she was able to continue working on an older laptop on the same project documents that she had been working on from earlier that day. More importantly, Ms. Burkett also confirmed that those same documents were backed up on Avteq's computer, and that the information she retrieved after the coffee spill included edits she had made just prior to the coffee spill.  We have requested that you either (a) confirm that Ms. Burkett's testimony is accurate and withdraw the "coffee spill" excuse or (b) provide logs from the server which support your claims that her laptop was not synched with the server and provide the laptop for forensic examination.

You have repeatedly assured us that steps were being taken to determine if the data had been backed up.  Six months have gone by, however, and we still do not have any final confirmation about these matters.  Please provide this confirmation by May 23, 2016.  If the data was not backed up, then please provide the computer for forensic examination and provide a report from your forensic examiner by May 31, 2016.  If the data was backed up, then please provide the responsive data from the backup by May 31, 2016.

    We  will continue to work cooperatively with you and Terry and do not want to involve the Court in discovery disputes if possible.  For this reason, if you want to discuss these matters over the phone or even in person, we will do so. However we  have a firm discovery deadline in this matter, and an admonition from the Court that the time allowed for discovery is already double what the Court normally allows.  You promised to finish production of all documents by May 31, 2016 and we expect you to honor that promise.

    Thank you for your attention to this matter.

        Sincerely,

        GRAVES, DOUGHERTY, HEARON & MOODY, P.C.

        By: _____

                Steven D. Smit

SDS/jyl

# EXHIBIT P-3

Plaintiff's e-mail dated July 19, 2016,
with attachment

**In support of "Plaintiff's (Opposed) Motion to Strike Defendants' Global
'Attorneys' Eyes Only' Designations, or Alternatively, for Itemized Log"**

**Behrens, Eric**

| | |
|---|---|
| **From:** | Smit, Steve D. |
| **Sent:** | Tuesday, July 19, 2016 5:39 PM |
| **To:** | James Collura; Justin Scott |
| **Cc:** | Frank Wright; Ryan Kinder; Hurd, Kate; Alcala, Michelle; Langer, Jeannette; Cumings, Brian T.; Behrens, Eric; Susan Strawn (susan.strawn@usdoj.gov) |
| **Subject:** | RE: U-Loft/Avteq - Lacy Lane |
| **Attachments:** | stipulation and supplemental protective order.docx |

Jim and Justin:

   I understand Jim is out of town until the end of July, but we need resolution before then on the AEO issue we have brought up several times. As we have discussed, the vast majority of Defendants' documents were indiscriminately designated as AEO by former counsel (including numerous public documents), and we have repeatedly asked that Defendants review their production and remove the AEO designations from documents that are not AEO. The AEO issue is a real problem, because the Protective Order in place does not allow us to share AEO material with any client representatives (including ULoft's in-house lawyer), even when preparing for ULoft's 30(b)(6) deposition. It also is a problem because the current Protective Order arguably does not allow Susan Strawn to share any Classified Material (AEO or Confidential) with other necessary government personnel.

   As you know, the AEO designation should only be used for sensitive present-day competitive information or sensitive financial information, not historical data from years ago. We note that Justin sent spreadsheets today that he tagged as "Confidential" rather than as AEO, which we believe is the correct designation for this type of data.

   Rather than filing a Motion asking the Court to find that Defendants violated the Court's Order regarding use of the AEO designation and requiring Defendants to review all of their production and redesignate their documents, we believe our main concerns can be addressed by the parties and the US agreeing to a supplemental Protective Order that allows Uloft's in-house counsel and appropriate government personnel to review Designated materials. I have attached a proposed stipulation/supplemental proposed order to that effect, which has already been approved by Susan Strawn. I have not yet added signature blocks for the parties.

Please let me know this week if the proposed order is acceptable. If not, we will need to file the Motion.

Regards, Steve

Steve Smit
480-5653 (tel)
480-5853 (fax)
ssmit@gdhm.com (email)



**GRAVES DOUGHERTY HEARON & MOODY**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* UNIVERSITY LOFT COMPANY | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. SA-14-CA-528-OLG |
| | § | |
| AGS ENTERPRISES, INC. D/B/A AVTEQ, | § | |
| INC., KLN STEEL PRODUCTS CO. LLC, | § | |
| FURNITURE BY THURSTON, INC., | § | |
| DEHLER MANUFACTURING, INC., JOHN | § | |
| O'DONNELL, and KELLY O'DONNELL | § | |
| Defendants. | § | |

## STIPULATION AND SUPPLEMENTAL PROTECTIVE ORDER

WHEREAS, the United States of America is the real party of interest in litigation between Relator/Plaintiff University Loft Company and defendants AGS Enterprises, Inc. dba Avteq, Inc., KLN Steel Products. C. LLC, Furniture by Thurston, Inc., Dehler Manufacturing, Inc. John O'Donnell and Kelly O'Donnell, (collectively, "AGS") in Civil Action No. SA-14-CA-0528-OG, alleging, among other things, certain violations of the False Claims Act, 31 U.S.C. § 3729 et seq.; and

WHEREAS, AGS and University Loft have entered into a Protective Order, to which the United States is not a signatory, in the litigation; and

WHEREAS, AGS and University Loft desire to modify the Protective Order to designate additional individuals who are considered "Qualified Persons" who can receive For Counsel or Attorneys' Eyes Only information under Paragraph 2(c) of the Protective Order; and

2508085.1

WHEREAS, both AGS and University Loft desire to produce products of discovery to the United States that may have been produced and designated confidential and/or Attorneys' Eyes Only pursuant to the Protective Order between the parties; and

WHEREAS, AGS and University Loft believe that some documents that they will produce to the United States may contain trade secrets, proprietary financial or commercial material, or other competitively sensitive information; and

WHEREAS, it is stipulated and agreed that this Supplement to the Protective Order applies to AGS, University Loft and the United States of America, and sets forth the terms that will govern the disclosure and use of documents produced to the United States by either party that AGS and/or University Loft has designated as confidential or Attorneys' Eyes Only pursuant to the Protective Order between the parties;

NOW, THEREFORE, it is hereby ORDERED:

1.      Additional Qualified Persons who are entitled to receive material designated as "For Counsel" or "Attorneys' Eyes Only information" under the Protective Order are in-house counsel for AGS and University Loft, as well as their immediate paralegals and staff to whom disclosure is reasonably necessary for this case, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 11(b) of the Protective Order .

2.      This Supplement to the Protective Order shall apply to all discovery and pleadings produced by either party to the United States that have been designated and marked by either party as confidential or Attorneys' Eyes Only pursuant to the Protective Order between the parties (hereinafter Protected Competitive Material).

3.      Discovery and pleadings so designated shall be maintained as confidential and shall not be used or disclosed for any purpose other than monitoring the above proceeding, investigating conduct alleged in the above proceeding or related conduct, and in litigation of the above matter or related matters, except as provided herein or as otherwise may be required by law.

4.      In the event of a request by a third party (excluding Congress or an agency of the United States) for disclosure of Protected Competitive Material, the United States will protect the documents from disclosure to the fullest extent permitted by law.  The designating party will be given as much notice as is practicable prior to the disclosure of Protected Competitive Material to a third party who requests disclosure under any provision of law.

4.      Nothing contained in this Order shall prevent or in any way limit or impair the right of the United States to disclose Protected Competitive Material to persons whose assistance is required to conduct the above-described monitoring and investigation and any related proceeding, including but not limited to employees, agents, consultants, or prospective witnesses; provided, however, that any such person to whom "Protected Competitive Material" is disclosed, excluding employees of the United States, first shall be advised of the terms of this Order and shall be required to execute a written acknowledgment that such person has read the Order and agrees to be bound by it.

5.      Nothing contained in this Order shall prevent or in any way limit or impair the right of the United States to disclose to any agency or department of the United States, or any division of any such agency or department, Protected Competitive Material relating to any potential violation of law or regulation, or relating to any matter within that agency's jurisdiction, nor shall anything contained in this Order prevent or in any way limit or impair the use of any

such Protected Competitive Material by an agency in any proceeding relating to any potential violation of law or regulation, or relating to any matter within that agency's jurisdiction; provided, however, that the agency shall maintain the confidentiality of Protected Competitive Material consistent with the terms of this Order.

6.      Nothing contained in this Order shall prevent or in any way limit or impair the right of the United States to provide any document or information to the Congress pursuant to a Congressional request; provided, however, that the United States shall notify the Congressional entity requesting the documents that the Protected Competitive Material has been produced pursuant to this Order and shall, if there are no objections interposed by the Congressional entity requesting the documents, use reasonable efforts to notify the designating party of the Congressional entity's request and the United States' response thereto.

7.      Nothing contained in this Order shall preclude the United States from contesting the designation of any document as Protected Competitive Material.  If the United States intends to contest any materials designated as Protected Competitive Material, it shall notify the designating party in writing at least ten business days prior to disclosing that document in any public proceeding or publicly filed document.  The designating party shall have the option to file a petition for a protective order with a court of competent jurisdiction demonstrating that there is good cause to designate the document at issue as Protected Competitive Material.  If a timely petition for a protective order is filed, the document at issue will be treated as Protected Competitive Material until a final, non-appealable order has been entered or until the time to appeal an order has expired.

8.      The fact that materials have been produced pursuant to this Protective Order shall not be offered or argued in any proceeding as a basis or reason why the designating party shall be

required to provide the same or similar documents to any other agency, as constituting a waiver of any applicable privilege, or as constituting a waiver of the right to object to disclosure of other documents or information.  However, the United States shall retain the right to contest the assertion of any such privilege or objection by the designating party.

9.     All discovery and pleadings produced to the United States pursuant to this Order shall be maintained and disposed of in compliance with the possessing agency's document retention and destruction schedule.


IT IS SO ORDERED THIS ___ DAY OF July, 2016


_____
UNITED STATES DISTRICT JUDGE

2508085.1

# EXHIBIT P-4

Defendants' letter dated July 22, 2016

**In support of "Plaintiff's (Opposed) Motion to Strike Defendants' Global 'Attorneys' Eyes Only' Designations, or Alternatively, for Itemized Log"**

# COATS | ROSE

*A Professional Corporation*

JAMES A. COLLURA, JR.
DIRECTOR
ADMITTED IN TEXAS AND GEORGIA

jcollura@coatsrose.com
Direct Dial
(713) 653-5710
Direct Fax
(713) 890-3964

July 22, 2016

**Via Email: ssmit@gdhm.com**
Steve Smit
Graves Dougherty Hearon & Moody
401 Congress, Suite 2200
Austin, Texas 78701

Re:   Civil No. SA-14-CA-528-OLG; *United States of America ex rel. University Loft Company v. AGS Enterprises, et al.*; In the United States District Court for the Western District of Texas, San Antonio Division

Dear Counsel:

I am in receipt of your email dated July 19, 2016 regarding a proposed stipulation and supplemental protective order. This letter is in response to same. Since this case has been on file, pursuant to 31 U.S.C. § 3730(b)(4)(B), the United States (the "Government") has declined to intervene in this action on three separate occasions. Because the Government has declined to intervene, its role in this matter is governed by 31 U.S.C. § 3730(c)(3), which provides that:

> If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense).

In its Notice of Election to Decline Intervention (Dkt. 5), the Government requested service of copies of pleadings and deposition copies as provided for in Section 3730(c)(3). Besides its participation in a potential dismissal or settlement of this matter, this is the statutory extent of the Government's role in this matter. Therefore, Defendants are not statutorily obligated to provide the Government with the documents contemplated by the Stipulation and Supplemental Protective Order. Under the terms of the Stipulation and Supplemental Protective Order, the Government could receive from you documents produced by Defendants that are devoid of their proper context and background. As such, Defendants oppose the proposed terms of the Stipulation and Supplemental Protective Order.

However, in previous discussions regarding this issue, Defendants have requested that Plaintiff identify specific documents that it wishes to re-designate from Attorneys' Eyes Only to Confidential so that the documents can be provided to others besides counsel and their immediate

July 22, 2016
Page 2

staff. If Plaintiff will identify the specific documents that it desires to re-designate, Defendants will evaluate that request and respond accordingly.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

James A. Collura, Jr.

JAC/jts

510350.000008\4849-1832-6581.v1

# COATS | ROSE

*A Professional Corporation*

JAMES A. COLLURA, JR.
DIRECTOR
ADMITTED IN TEXAS AND GEORGIA

jcollura@coatsrose.com
Direct Dial
(713) 653-5710
Direct Fax
(713) 890-3964

July 22, 2016

**Via Email: ssmit@gdhm.com**
Steve Smit
Graves Dougherty Hearon & Moody
401 Congress, Suite 2200
Austin, Texas 78701

Re:     Civil No. SA-14-CA-528-OLG; *United States of America ex rel. University Loft Company v. AGS Enterprises, et al.*; In the United States District Court for the Western District of Texas, San Antonio Division

Dear Counsel:

I am in receipt of your email dated July 19, 2016 regarding a proposed stipulation and supplemental protective order. This letter is in response to same. Since this case has been on file, pursuant to 31 U.S.C. § 3730(b)(4)(B), the United States (the "Government") has declined to intervene in this action on three separate occasions. Because the Government has declined to intervene, its role in this matter is governed by 31 U.S.C. § 3730(c)(3), which provides that:

> If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense).

In its Notice of Election to Decline Intervention (Dkt. 5), the Government requested service of copies of pleadings and deposition copies as provided for in Section 3730(c)(3). Besides its participation in a potential dismissal or settlement of this matter, this is the statutory extent of the Government's role in this matter. Therefore, Defendants are not statutorily obligated to provide the Government with the documents contemplated by the Stipulation and Supplemental Protective Order. Under the terms of the Stipulation and Supplemental Protective Order, the Government could receive from you documents produced by Defendants that are devoid of their proper context and background. As such, Defendants oppose the proposed terms of the Stipulation and Supplemental Protective Order.

However, in previous discussions regarding this issue, Defendants have requested that Plaintiff identify specific documents that it wishes to re-designate from Attorneys' Eyes Only to Confidential so that the documents can be provided to others besides counsel and their immediate

July 22, 2016
Page 2

staff. If Plaintiff will identify the specific documents that it desires to re-designate, Defendants will evaluate that request and respond accordingly.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

James A. Collura, Jr.

JAC/jts

510350.000008\4849-1832-6581.v1